UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                                      :
    UNITED STATES OF AMERICA,                         :
                                                      :
                                                      :
              -against-                               :          23-CR-363 (VSB)
                                                      :
    LEPIDO RAMIREZ RODRIGUEZ,                          :          **OPINION & ORDER**
                                                      :
                             Defendant.   :
--------------------------------------------------------X


VERNON S. BRODERICK, United States District Judge:

      Defendant Lepido Ramirez Rodriguez ("Defendant" or "Ramirez") is charged with one

count of illegal reentry, in violation of 8 U.S.C. § 1326(a) & (b)(2).  (Doc. 6, "Indictment".)

Before me is Defendant's motion to dismiss the indictment under 8 U.S.C. § 1326(d) and Federal

Rule of Criminal Procedure 12(b)(3) based on his collateral challenge to the validity of the

removal order that was issued at his 2000 removal proceedings.  (Doc. 15, "Def. Br."[1])  Because

Defendant's 2009 and 2013 illegal reentry convictions, which predated the reinstatement of the

2000 removal order, constitute aggravated felonies rendering him ineligible for immigration

relief, Defendant cannot establish he suffered prejudice as a result of the immigration judge's

procedural error; therefore, Defendant's motion is DENIED.

     I.      **Factual Background**

          A.  *Defendant's Initial Removal Proceedings and 2000 Removal Order*

      Ramirez was born on August 8, 1958 in the Dominican Republic.  (Def. Ex. 15-1.)  He

became a legal permanent resident of the United States on September 14, 1990.  (Def. Ex. 15-2.)

---

[1] "Def. Ex." refers to the exhibits filed in connection with Defendant's submission.  (*See* Docs. 15-1 –15-13.)

1

Defendant's wife and at least five of his children are all United States citizens.  (Def. Exs. 3–8.)

On or about January 21, 1998, Defendant was arrested by the New York City Police Department

("NYPD") for criminal sale and criminal possession of a controlled substance, (Def. Ex. 15-9),

and convicted on July 22, 1999 of second-degree criminal sale of a controlled substance, namely

cocaine, in violation of New York Penal Law ("NYPL") Section 220.41.  (*Id.*)  Defendant was

sentenced to five years to life imprisonment.  (*Id.*)

Following his conviction, Defendant was ordered to appear for a removal proceeding.

(Def. Ex. 2.)  On December 17, 1999, Defendant appeared before an immigration judge by video

from the Riverview Correctional Facility, where he was serving his sentence for his state drug

conviction.  (Def. Ex. 10; Def. Br. 4.)  Defendant was not represented by counsel at the

proceeding, and was advised by the immigration judge that although the court did not have a list

of available free legal counsel, he had the right to be represented by counsel at his own expense.

(Def. Ex. 10 at 01:21–01:41; 3:00–3:35.)  After Ramirez informed the immigration judge that he

would like an opportunity to try to find counsel to represent him, the immigration judge

adjourned the proceeding to February 11, 2000.  (*Id.* at 03:35–04:35.)

At the hearing on February 11, 2000, Defendant, who had not hired an attorney, again

appeared by video from the Riverview Correctional Facility.  During that appearance, he

admitted that he was a citizen of the Dominican Republic and was not a citizen of the United

States, (*id.* at 08:20–09:10), and that he had been convicted of selling cocaine on July 22, 1999, a

conviction for which he was currently serving a prison term and which he did not appeal, (*id.* at

09:10–09:45)  After informing Defendant that his drug conviction was final, the immigration

judge then made several factual findings:  (1) that Ramirez could be removed from the United

States based on his drug conviction; and (2) that he could also be deported because his

2

conviction was an aggravated felony.  (*Id.* 9:45–10:27.)  After making the findings, the

immigration judge ordered Ramirez removed to the Dominican Republic.  (*Id.* 10:33 –11:32.)

The immigration judge also advised Ramirez of his right to appeal any final decision to the

Board of Immigration Appeals, and asked Defendant whether he wanted to appeal the decision.

(*Id.* at 07:25-07:50.)  Ramirez declined to appeal.  (*Id.*)

Following the hearing, the immigration judge issued an order of removal on February 11,

2000.  (Def. Ex. 13, "2000 Removal Order".)  On the 2000 Removal Order, which stated

"respondent has made no application for relief from removal," the immigration judge crossed out

"has made no application" and instead added a handwritten notation that Ramirez was "not

eligible for relief from removal."  (*Id.*)  After completing his state sentence for the drug

conviction, Ramirez was released to immigration custody and was deported to the Dominican

Republic on April 30, 2001.  (Def. Ex. 12; Doc. 1, "Compl.," ¶ 3(b).)  The March 12, 2001

warrant of removal stated that Defendant was to be removed pursuant to the 2000 Removal

Order and the provisions of the Immigration and Nationality Act ("INA") which make non-

citizens who have been convicted of an aggravated felony, (*see* 8 U.S.C. § 237(a)(2)(A)(iii)), or

who have been convicted of a controlled substance offense, (*see id.* § 237(a)(2)(B)(i)),

deportable.  (Def. Ex. 12.)

### B.  *Defendant's 2009 and 2013 Illegal Reentry Convictions and 2010 and 2016 Removal Orders*

Ramirez returned to the United States several times after he was first removed on April

30, 2001.  On or about March 12, 2006, Ramirez applied for permission to reapply for admission

into the United States.  (Gov't. Ex. 1.[2])  Despite the Department of Homeland Security's denial

---

[2] "Gov't. Opp." refers to the Government's submission, (*see* Doc. 20), and "Gov't. Ex." refers to the exhibits filed in connection with the Government's submission, (*see* Docs. 20-1—20-5).

of his application, issued on or about October 16, 2008, (*see id*.), Defendant nonetheless returned to the United States.  On or about July 24, 2009, Ramirez was arrested by immigration authorities, and was later charged in this district with illegal reentry after having been removed subsequent to an aggravated felony conviction.  (*See United States v. Ramirez*, No. 09-CR-751 (RWS); Compl. ¶ 3(d).)  Defendant pled guilty to this charge on October 14, 2009, and was sentenced to 18 months' imprisonment.  (*See* Compl. ¶ 3(e).)  The INA provides that if a non-citizen reenters the United States "illegally after having been removed . . . under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed," the non-citizen is "not eligible and may not apply for any relief," and the non-citizen "shall be removed under the prior order at any time after the reentry."  8 U.S.C. § 1231(a)(5).  Based on this provision and the reinstatement of the 2000 Removal Order, Defendant was deported to the Dominican Republic for a second time pursuant to a warrant of removal dated September 24, 2010.  Defendant did not move to dismiss or appeal the charge, nor did Defendant otherwise move to collaterally attack the underlying 2000 Removal Order.

Following his second deportation, Ramirez again illegally entered the United States.  On June 4, 2013, Defendant was arrested by the Drug Enforcement Administration and the NYPD. Although Defendant was initially charged with money laundering in connection with this arrest, he ultimately was not prosecuted for this charge.  (Compl. ¶ 3(f).)  Defendant was, however, again charged with illegal reentry, along with having violated the conditions of his supervision in connection with the 2009 illegal reentry case.  Defendant pled guilty on or about August 7, 2013, and was sentenced to 45 months' imprisonment to be followed by one month of imprisonment, to be served consecutively, on the violation.  (*Id*.)  Defendant was deported to the Dominican Republic pursuant to a September 14, 2016 warrant of removal which was, again, based on a

reinstatement of the 2000 Removal Order.  (*See* Gov't. Ex. 5.)  As with the first illegal reentry charge, Defendant neither moved to dismiss or appeal this charge, and did not otherwise collaterally attack the underlying 2000 Removal Order.

After illegally returning to the United States a third time, Defendant was arrested by the NYPD on or about October 27, 2022, and charged with first-degree criminal possession of a controlled substance, in violation of NYPL Section 220.21.  (*See* Def. Ex. 11.)  On or about March 15, 2023, Defendant pled guilty to third-degree criminal possession of a controlled substance, in violation of NYPL Section 220.16.  Defendant was sentenced to two years' imprisonment.  (Compl. ¶ 3(g).)  Defendant was then charged by Complaint in this district with illegal reentry after being removed subsequent to a conviction for an aggravated felony.  (*See* Compl.)  On July 18, 2023, Defendant was indicted on this charge.

## II.   <u>Procedural History</u>

Defendant filed a motion to dismiss the single-count indictment, as well as his accompanying memorandum of law and exhibits, on November 8, 2023.  (Docs. 14–15.)  The Government filed its opposition and exhibits on December 4, 2023.  (Doc. 20.)  Defendant then filed his reply on December 8, 2023.  (Doc. 21, "Def. Reply".)  Oral argument was held on February 1, 2024.  (Doc. 25, "Oral Arg. Tr.".)

## III.   <u>Applicable Law</u>

A defendant may move to dismiss an indictment for failure to state an offense.  *See* Fed. R. Crim. P. 12(b)(3)(B)(v).  In order to sustain an illegal reentry charge, the Government must establish that a defendant was previously deported at least once, and that the deportation was lawful.  *See* 8 U.S.C. § 1326.  The Supreme Court held in *United States v. Mendoza-Lopez* that a defendant charged with illegal reentry must have the opportunity to challenge an underlying

deportation order if those proceedings violated the defendant's due process rights.  481 U.S. 828, 837–39 (1987) ("[A]t a minimum . . . a collateral challenge to the use of a deportation proceeding as an element of a criminal offense must be permitted where the deportation proceeding effectively eliminates the right of the [noncitizen] to obtain judicial review."). Congress codified the Supreme Court's holding in *Mendoza-Lopez* at 8 U.S.C. § 1326(d), which sets forth mandatory requirements that a defendant must meet before collaterally attacking a removal order upon which his illegal reentry charge is predicated.  Section 1326(d) requires a defendant and non-citizen to that:  (1) he exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the non-citizen of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair.  *See* 8 U.S.C. § 1326(d).

As set forth in the Second Circuit's decisions in *United States v. Copeland*, 376 F.3d 61 (2d Cir. 2004), *United States v. Sosa*, 387 F.3d 131 (2d Cir. 2004), and *United States v. Calderon*, 391 F.3d 370 (2d Cir. 2004), a defendant must be excused from proving the first two requirements of Section 1326(d) in circumstances which implicate constitutional due process considerations.  In *Copeland*, the court held that there is no "realistic opportunity for judicial review" in circumstances where a defendant is misinformed by an immigration judge because the "waiver of the right to appeal is not knowing," and where "the interval between entry of the final deportation order and the physical deportation is too brief to afford a realistic possibility of filing a habeas petition."  376 F.3d at 68 & n.6.  In *Sosa*, the court similarly held that Section 1326(d)(1)'s exhaustion requirement "must be excused where an [non-citizen]'s failure to exhaust results from an invalid waiver of the right to an administrative appeal."  387 F.3d at 136. In *Calderon*, the Second Circuit further held that "a failure to exhaust administrative remedies

6

bars collateral review of a deportation proceeding under Section 1326(d)(1) . . . only where an [non-citizen]'s waiver of administrative review was knowing and intelligent."  391 F.3d at 374–75 (internal quotation marks and citation omitted).  In so holding, the court reasoned that a failure to permit excusal under such circumstances "would offend the principles enunciated in *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987)."  *Id.*

In *Palomar-Santiago*, the Supreme Court recently rejected Ninth Circuit precedent as set forth in *United States v. Ochoa*, 861 F.3d 1010 (9th Cir. 2017), which—like the Second Circuit cases cited above—excused defendants from complying with § 1326(d)'s requirement that they exhaust their administrative and judicial remedies if the underlying removal order is based on a conviction that did not render the defendant removable.  141 S. Ct. at 1620–21; *see Ochoa*, 861 F.3d at 1015.  The Supreme Court unanimously found that "[t]he Ninth Circuit's interpretation is incompatible with the text of § 1326(d)" because the statute plainly states that "defendants charged with unlawful reentry 'may not' challenge their underlying removal orders 'unless' they 'demonstrat[e]'" that the three requirements are met."  *Id*. at 1620.[3]

---

[3] The Government argues that *Palomar-Santiago* abrogates the *Calderon*, *Sosa*, and *Copeland* line of cases.  (Gov't. Opp. 17–19 (citing *Palomar-Santiago*, 141 S. Ct. at 1620–21 (2021); *see also* Oral. Arg. Tr. 493 (arguing that the Second Circuit line of cases which have excused defendants from § 1326(d)'s exhaustion requirement, including *Sosa* and *Calderon*, are "essentially abrogated" by *Palomar-Santiago*).)  The Government also argues that the Second Circuit's precedent is "essentially [] the same rule" as the Ninth Circuit's rule that the Supreme Court overturned in *Palomar-Santiago*.  (*Id*. at 51.)  Defendant argues that "nothing in *Palomar-Santiago* affects [these] Second Circuit cases" because the Supreme Court "expressly declined to consider whether the application of §§ 1326(d)(1) and (2) to bar the challenge to a re-entry prosecution comported with Due Process and/or the separation of powers."  (Def. Reply. 14 (citing *Palomar-Santiago*, 141 S. Ct. at 1622 n.4.).)  Thus, Defendant argues that his failure to exhaust should be excused because he has satisfied the requirements of §§ 1326(d)(1) and (2), as his waiver of his right to appeal was not "knowing and intelligent."  (Def. Br. 11–12.)

Defendant cites a number of cases in which courts in this Circuit have continued to find *Calderon*, *Sosa*, and *Copeland* binding Second Circuit precedent in the wake of *Palomar-Santiago*.  (*See* Def. Reply 16–17 (citing *United States v. Gutierrez-Campos*, No. 21-CR-40 (JPC), 2022 WL 281582, at *19 (S.D.N.Y. Jan. 31, 2022); *United States v. Guzman*, No. 19-CR-435 (GHW), 2022 WL 17068800, at *6 (S.D.N.Y. Nov. 17, 2022); *United States v. Contreras*, No. 22-CR-129 (PGG), 2023 WL 3569274, at *11 n. 10 (S.D.N.Y. May 17, 2023); *United States v. Young*, No. 22-CR-67 (JMA), 2023 WL 4054527, at *7–8 (E.D.N.Y. June 16, 2023); *United States v. Holmes*, No. 21-CR-147 (NGG), 2022 WL 1036631, at *12-13 (E.D.N.Y. Apr. 6, 2022); *United States v. Grant*, No. 21-CR-328-1 (JS), 2023 WL 5719888, at *6 (E.D.N.Y. Sept. 5, 2023).  Notably, in each of these cases, the court found that the

IV.   **Discussion**

Defendant argues his state drug conviction is not a removable offense and, therefore, that the 2000 Removal Order, which the instant illegal reentry charge is based on, is invalid.  (Def. Br. 3.)  Although the Government concedes that Defendant was not charged with a removeable offense during the 2000 removal proceedings, it argues that Defendant's collateral attack fails because he was not prejudiced by any fundamental procedural error.  Specifically, the Government argues that because the Defendant was subsequently convicted twice of illegal reentry, convictions which qualify as aggravated felonies and render him statutorily ineligible for any immigration relief, he cannot establish the only prejudice he claims—that he would not have been deported.  (Gov't. Opp. 2.)  The Government further argues that the Defendant's failure to exhaust his administrative remedies and seek judicial review—requirements when mounting a collateral challenge under Section 1326(d)—cannot be excused based on the Supreme Court's recent decision in *Palomar Santiago*.  (*Id*. at 3 (citing *Palomar Santiago*, 141 S. Ct. at 1620–21).)

### A.  *The 2000 Removal Order Involved a Fundamental Procedural Error*

Because any assessment of Defendant's failure to exhaust his administrative remedies and to seek judicial relief is necessarily informed by whether the 2000 Removal Order was fundamentally unfair, I begin my analysis with the third prong of Section 1326(d).  In order to demonstrate fundamental unfairness, a defendant "must show both a fundamental procedural

---

defendant had otherwise established the fundamental unfairness prong of Section 1326(d).  In *Gutierrez-Campos*, Judge John P. Cronan held that *Palomar-Santiago*'s holding "was limited to statutory construction and did not address the constitutional concerns implicated in *Sosa* and other Second Circuit cases."  *Gutierrez-Campos*, 2022 WL 281582, at *19 (S.D.N.Y. Jan. 31, 2022).  The Government's appeal of Judge Cronan's decision is currently pending.  *See United States v. Gutierrez-Campos*, No. 22-438 (2d Cir.).

Because I find that Defendant cannot establish fundamental unfairness, I need not decide whether *Calderon*, *Sosa*, and *Copeland* survive *Palomar-Santiago*, or whether Defendant's failure to exhaust his administrative remedies and failure to seek judicial relief bars his collateral challenge to the validity of the removal order.

error and prejudice resulting from that error." *United States v. Fernandez-Antonia*, 278 F.3d 150, 159 (2d Cir. 2002); *United States v. Lopez*, 445 F.3d 90, 100 (2d Cir. 2006).  "The [non-citizen] bears the burden of showing that entry of the removal order was fundamentally unfair." *United States v. Daley*, 702 F.3d 96, 100 (2d Cir. 2012).  Defendant argues that the 2000 Removal Order was fundamentally unfair because the immigration judge incorrectly determined that his state drug conviction for criminal sale of cocaine was a removable offense.  Specifically, Defendant argues that his drug conviction was neither a controlled substance offense, as defined by federal law, nor an aggravated felony, and that "because a removal order based on a conviction that does not warrant removal is, self-evidently, both a fundamental error and prejudicial," the 2000 Removal Order was fundamentally unfair.  (Def. Br. 10.)

Pursuant to the INA, a non-citizen must be deported if he falls under certain enumerated classes that are not eligible for voluntary departure.  *See* 8 U.S.C. § 1227(a).  Two such classes that are subject to mandatory removal are those who have been convicted of an "aggravated felony," *id*. § 1227(a)(2)(A)(iii), and those who have been convicted of a controlled substance offense, (*see id*. § 1227(a)(2)(B)(i).)  The law requires that I employ the "categorical approach" to determine whether Defendant's state drug conviction qualifies as an "aggravated felony" under the INA.  *See e.g., Mellouli v. Lynch*, 575 U.S. 798, 806 (2015); *Williams v. Barr*, 960 F.3d 68, 72 (2d Cir. 2020) ("If the state statute criminalizes conduct that the federal offense does not, the two are not categorical matches and a conviction under the state statute cannot serve as a predicate for removal under the INA"); *Moncrieffe v. Holder*, 569 U.S. 184, 192 (2013) ("[A] state drug offense must . . . necessarily proscribe conduct that is an offense under the CSA, and the CSA must necessarily prescribe felony punishment for that conduct." (internal quotation

marks omitted).[4]

In *United States v. Minter*, the Second Circuit recently held that because New York state law criminalizes conduct that the federal Controlled Substances Act does not, that "New York's definition of cocaine is categorically broader than its federal counterpart."  80 F. 4th 406, 411 (2d Cir. 2023).  Under *Minter*, because New York's definition of "narcotic drugs" sweeps more broadly than its federal analog, such convictions cannot constitute a "controlled substance offense" under the categorical approach.  *Id.*  Defendant asserts that *Minter* is "merely a clarification of what the law has always been since 1986" rather than a change in the law.  (Oral Arg. Tr. 13–14.)  Defendant argues, therefore, that his conviction was not—now or at the time— a controlled substance offense, and that the immigration judge committed a procedural error when she deemed Defendant removable based on her determination otherwise.  (Def. Br. 10.) The Government concedes, apparently in light of *Minter*, that Defendant's drug conviction was not a removable offense, and that the 2000 Removal Order thus involved a fundamental procedural error.  (Oral Arg. Tr. 7.)  Despite this concession, however, the Government argues that I "need not reach the issue of whether the 2000 Removal Order resulted from a fundamental procedural error" because Defendant cannot demonstrate the prejudice necessary to meet the two-pronged test of fundamental unfairness.  (Gov't. Opp. 11.)  For the reasons set forth below, I

---

[4] The so-called "categorical approach" controls despite Defendant having been convicted of an offense involving cocaine, which is considered a controlled substance under both New York State law and federal law.  (Gov't. Opp. 3–4 ("As the defendant agrees, his conviction was for the sale of a substance expressly controlled by the Controlled Substances Act: cocaine.").)

Here, I pause to note as I did during oral argument, (Oral Arg. Tr. 7.), that the judicially created construct of the so-called "categorical approach" hampers the efficient administration of justice by courts.  Therefore, I join the growing chorus of judges asking that the Supreme Court or Congress free the criminal justice system from the shackles that the categorical approach has become.  *See United States v. Scott*, 990 F.3d 94, 125–26 (2d Cir. 2021) (Park, *J.*, concurring on behalf of five judges) (collecting cases from the First, Third, Fourth, Fifth, Sixth, Ninth, and Eleventh Circuits noting the "absurdity" of the categorical approach and the "growing number of judges across the country [who] have explained [that] the categorical approach perverts the will of Congress, leads to inconsistent results, wastes judicial resources, and undermines confidence in the administration of justice.").

agree with the Government.

### B.  *The Defendant Cannot Establish Prejudice*

The prejudice prong of the two-pronged test of fundamental unfairness requires

Defendant to establish that "absent the procedural errors, he would not have been removed."

*Fernandez-Antonia*, 278 F.3d at 159; *see also United States v. Copeland*, 376 F.3d 61, 73 (2d

Cir. 2004) ("Prejudice is shown where defects in the deportation proceedings may well have

resulted in a deportation that would not otherwise have occurred.") (internal quotation marks and

citation omitted).  Defendant argues that he suffered prejudice because but-for the immigration

judge's erroneous determination that Defendant had committed an aggravated felony and a

controlled substance offense, he would have been permitted to remain in the United States as a

lawful permeant resident.  (Def. Br. 10.)  The Government asserts that Defendant cannot

establish prejudice because even if he would have been permitted to remain in the United States

but-for the immigration judge's fundamental procedural error, he subsequently became

removable and statutorily ineligible for any immigration relief after pleading guilty to illegal

reentry in 2009 and 2013, convictions that were themselves aggravated felonies under the INA

predating the reinstatements of the removal order.  (Gov't. Opp. 12.)

### 1.  Defendant's Subsequent Illegal Reentry Convictions Constitute Aggravated Felonies

As a threshold matter, the Government's prejudice argument depends on my finding that

the Defendant's 2009 and 2013 convictions constitute aggravated felonies.  The aggravated

felony definition under the INA includes "an offense described in section 1325(a) or 1326 of this

title committed by [a non-citizen] who was previously deported on the basis of a conviction for

an offense described in another subparagraph of this paragraph."  8 U.S.C. § 1101(a)(43)(O).

Thus, there are two elements under § 1101(a)(43)(O):  (a) a § 1325(a) or § 1326 violation and (b)

reentry after deportation based on another aggravated felony.  There is no question that Defendant committed a violation of § 1326, but the parties disagree concerning whether Defendant's state drug conviction, no longer itself an aggravated felony, can still serve as the predicate aggravated felony offense for his subsequent illegal reentry convictions.

The Second Circuit has not yet addressed whether an illegal reentry conviction that is predicated on an offense that is, itself, no longer an aggravated felony may nonetheless still qualify as an aggravated felony.  The Government urges me to adopt the reasoning of the Fifth Circuit, the only federal court of appeals to have considered this exact question, in *United States v. Huerta-Rodriguez*, 64 F.4th 270, 276 (5th Cir. 2023), which held that an intervening illegal reentry conviction is itself an aggravated felony even if the predicate offense on which the conviction is based no longer constitutes an aggravated felony.  (*See* Gov't. Opp. 14 (citing *United States v. Huerta-Rodriguez*, 64 F.4th 270, 276 (5th Cir. 2023).)

Although I am not bound by *Huerta-Rodriguez*, I nonetheless find the court's reasoning instructive and persuasive.  In *Huerta-Rodriguez*, the defendant was convicted of first-degree burglary and was deported to Mexico after being released on parole.  *Id.* at 273.  Thereafter, the defendant was then convicted three times of illegal reentry.  After his first illegal reentry conviction, the Supreme Court issued an opinion making clear that defendant's burglary no longer qualified as an aggravated felony.  *Id.* at 274 (citing *Mathis v. United States*, 579 U.S. 500, 604 (2016)).  Subsequently, the defendant was convicted for the second time of illegal reentry, and the Presentence Investigation Report ("PSR") identified both the burglary and the defendant's first illegal reentry conviction as aggravated felonies.  *Id.* at 275.  Defendant objected to the PSR, arguing that an aggravated-felony enhancement should not apply because, after *Mathis*, his burglary conviction no longer qualified as an aggravated felony.  *Id.*  The

district court disagreed, and sentenced the defendant to a two-year prison term after which he was deported to Mexico for a third time in August 2018.  *Id.*

After defendant reentered the country, he was convicted for a third time of illegal reentry, and again objected to the PSR's characterization of his burglary and two prior illegal reentry convictions as aggravated felonies.  Although the Government conceded that the defendant's burglary offense no longer qualified as an aggravated felony under *Mathis*, it argued that Section 1326(b)(2) still applied because the defendant's first illegal-reentry conviction was nonetheless an aggravated felony under 8 U.S.C. § 1101(a)(43)(O).  The district court agreed.

On appeal, the defendant challenged the district court's characterization of both his burglary and prior illegal reentry convictions, arguing that because his burglary offense no longer constituted an aggravated felony, neither did his illegal reentry convictions.  *Id.* at 277.  The Fifth Circuit disagreed, holding that even though the predicate burglary offense no longer qualified as an aggravated felony, the defendant's intervening illegal reentry conviction was still, itself, an aggravated felony that supported the enhanced penalties under § 1326(b)(2).  In so holding, however, the court limited its holding to "only [] the narrow set of circumstances" before it.  *Id.* at 278.

Although the parties disagree concerning whether the Fifth Circuit intended to limit its holding to the sentencing context, as Defendant argues, or more broadly to cases involving a non-aggravated felony predicate offense and an intervening aggravated felony conviction, as the Government suggests, I need not resolve that dispute, as I find the Fifth Circuit's statutory analysis applicable and persuasive irrespective of the holding's scope.  Although Defendant identifies several purported errors in the Fifth Circuit's reasoning, I do not find these arguments compelling.  First, Defendant argues that the Fifth Circuit's holding conflicts with Second

13

Circuit caselaw establishing that courts must analyze a § 1326(d) motion with the advantage of hindsight.  (Def. Reply 11 (citing *United States v. Pineda*, 2020 WL 5981901, at *6 (E.D.N.Y. Oct. 8, 2020) and *United States v. Brown*, 354 F. Supp. 3d 362, 370 (2018).)  Nothing in the Fifth Circuit's reasoning calls that authority into question.  Indeed, the Fifth Circuit conducted a backward-looking analysis based on current law and ultimately concluded, correctly, that it is "impossible to alter the historical fact" of the defendant's conviction.  *Huerta-Rodriguez*, 64 F.4th at 278.  Defendant also argues that the Fifth Circuit's reading does not avoid rendering Section 1101(a)(43)(O) superfluous.  I disagree.  *See id.* at 279.  ("[I]f the application of § 1101(a)(43)(O) always depends on a predicate crime simultaneously qualifying as an aggravated felony, then the provision would do no work.")  I also agree with the Fifth Circuit's reasoning that Congress "wished to deter [non-citizens] from illegally reentering when they had past convictions that qualified, at the time of reentry, as aggravated felonies."  *Id.* at 279 n.44.

Here, as in *Huerta-Rodriguez*, Defendant was convicted of a state drug offense that is no longer considered an aggravated felony, but which served as the predicate offense for his 2009 and 2013 illegal reentry convictions.  After Defendant was removed from the United States in 2001, he reentered the United States three times with the understanding that his previous drug conviction was an aggravated felony.  Indeed, Defendant pled guilty in 2009 and 2013 to illegal reentry after removal for an aggravated felony.  Thus, adopting the reasoning of the Fifth Circuit, I find that regardless of the status of Defendant's state drug conviction, his 2009 and 2013 illegal reentry convictions constitute aggravated felonies.

### 2.  Defendant Was Not Prejudiced

Having found that Defendant's two prior illegal convictions constitute aggravated felonies, I now consider what impact, if any, those convictions have on Defendant's argument that he was prejudiced by the 2000 Removal Order.  The Government argues the 2010 and 2016

14

reinstatements of the initial removal order—reinstatements which occurred after Defendant had been convicted of two aggravated felonies that would have rendered him statutorily ineligible for any immigration relief—do not themselves give rise to any prejudice. (Gov't. Opp. 13.) Defendant argues that regardless of whether he would have been removable based on the subsequent convictions, the only relevant issue before me on a Section 1326(d) collateral challenge is whether Defendant was prejudiced by the original 2000 Removal Order. (Def. Reply 4; *see also* Oral Arg. Tr. 12–13.) As noted, Defendant claims he was prejudiced because the immigration judge incorrectly determined that he was removable, such that he should have been permitted to remain in the United States. (Def. Br. 12). Regardless of whether the 2000 Removal Order suffered from any procedural defects, however, I agree with the Government that Defendant's subsequent illegal reentry convictions rendered him ineligible for immigration relief, thereby defeating his prejudice argument.

Defendant cites a number of cases where courts have found prejudice in circumstances where immigration judges issued a removal order based on an erroneous determination that the defendant was removable. (*See* Def. Br. 10–11 (collecting cases).) In each of these cited cases, however, as is required under the law, *see Fernandez-Antonia*, 278 F.3d at 159, the immigration judge's error resulted in a deportation that would not have otherwise occurred. That is not the case here. None of the cases cited by defendant feature an intervening aggravated felony conviction that occurred prior to the reinstatement of the removal order, let alone two intervening felony convictions that were not otherwise challenged and rendered Defendant deportable.

As the Government notes, Judge Jed S. Rakoff denied a defendant's motion to dismiss the indictment in a case which, unlike the cases cited by Defendant, did feature an intervening felony. (*See* Gov't. Opp. 12–13 (citing *United States v. Barrera Moreno*, 410 F. Supp. 3d 697

(S.D.N.Y. 2019).)  In *Barrera Mareno*, after defendant was removed pursuant to a removal order, he unlawfully returned to the United States and was convicted of narcotics conspiracy.  *Id*. at 699.  The removal order was then reinstated, as it was in this case, and the defendant was removed.  *Id*.  After the defendant again returned to the United States and was indicted for illegal reentry, he moved to dismiss he indictment pursuant to Section 1326(d), challenging the validity of his 2007 removal order based on alleged procedural defects.  Judge Rakoff reasoned that because Defendant was removable and statutorily ineligible for immigration relief because he had been convicted of an aggravated felony before the removal order was reinstated, he could not establish prejudice.  *Id*. at 701 ("[T]he reinstated removal order did not cause any prejudice, since by that time Barrera would not have been eligible for voluntary departure in any event.").  Defendant argues that *Barrera Mareno* is inapposite because he was not convicted of any independent crimes that are "completely disconnected from the procedurally defective February 2000 removal order."  (Def. Reply 8–9.)  Although the intervening aggravated felony conviction at issue in *Barrera-Mareno* was narcotics conspiracy—as opposed to illegal reentry convictions predicated on an underlying removal order—that is a distinction without difference.  The dispositive fact, both here and in *Barrera-Mareno*, is the intervening aggravated felony conviction which serves as the predicate for the instant charge and renders Defendant ineligible for relief.  Although not critical to the Defendant's collateral challenge, it is worth nothing that at no point, until now, has Defendant challenged the validity of the 2000 Removal Order or any other aspect of his 2009 and 2013 convictions.

Defendant also asserts that he need not establish that he was prejudiced from the 2010 and 2016 reinstatements of the 2000 Removal Order, and that *Barrera-Mareno* contravenes the Second Circuit's decision in *United States v. Scott*, 394 F.3d 111 (2d Cir. 2005).  In so arguing,

Defendant suggests that *Scott* prohibits me from considering whether Defendant suffered any prejudice with respect to subsequent reinstatements of the removal order.  (Oral Arg. Tr. 46.) However, that is a misreading of *Scott*.  In *Scott* the defendant was a lawful permanent resident who was ordered removed after being convicted of two state criminal offenses.  *Scott*, 394 F.3d at 113–14.  After he was ordered removed in absentia, he appealed to the Board of Immigration Appeals ("BIA").  *Id*. at 114.  He was then convicted of possession of burglar's tools.  *Id*.  A few years later, after the BIA dismissed his appeal, defendant was deported.  Defendant then reentered the United States, and was arrested for, among other things, grand larceny.  *Id*.  He was then charged with illegal reentry after deportation.  He moved to dismiss the indictment and collaterally challenged his deportation.

On appeal, the Second Circuit held that the district court had erred in considering "*ex post* data," the conviction for possession of burglar's tools, in assessing whether the defendant was prejudiced by the fundamental procedural error that had occurred during the defendant's removal proceedings.  The court's directive that § 1326(d)'s prejudice inquiry "does not extend beyond the fairness of the deportation order itself," *id*. at 119, is "a temporal limitation" on what district courts are permitted to consider when assessing whether a Defendant was prejudiced, *id*. at 118. As the court held, "the district court should reconstruct events as they existed at the time of the disputed deportation proceeding, without considering future occurrences."  *Id*. at 119.

Critically, *Scott* involved a single removal order.  Moreover, unlike the criminal conduct in *Scott*—which occurred after the removal order was entered—here, Defendant pled guilty to illegal reentry twice before the removal order was reinstated.  In overlooking that factual distinction, Defendant misapplies *Scott*'s directive, which cannot, as Defendant suggests, be interpreted to limit a district court's ability to consider the facts as exist at the time of the

reinstatement of a removal order in assessing prejudice.  Thus, *Barrera Moreno* does not run afoul of *Scott*.  In considering the circumstances as they existed at the time, I do not consider whether Defendant's future criminal conduct would have nonetheless made him removable at the time of his 2000 Removal Order; rather, I consider whether this conduct made Defendant removable when that order was reinstated in 2010 and 2016.  *See Daley*, 702 F.3d 96 (distinguishing *Scott* and affirming district court's denial of motion to dismiss based on Section 1326(d) because district court "could and did consider Daley's entire criminal record as it existed at the relevant time").

Because Defendant cannot demonstrate that he suffered prejudice as a result of the immigration judge's procedural error, he has not demonstrated fundamental unfairness under Section 1326(d)(3), and his collateral attack must fail.

### V.    <u>Conclusion</u>

For the foregoing reasons, Defendant's motion is DENIED.  The Clerk of the Court is respectfully directed to terminate the open motion at Doc. 14.

SO ORDERED.

Dated:  March 7, 2024
        New York, New York

Vernon S. Broderick
United States District Judge

18